Treat, Justice, delivered the opinion of the court: In October, 1842, Loekridge filed his bill in chancery, alleging, in substance, that on the 19th of December, 1836, he purchased of George Foster the whole of two hundred and forty acres of land, and an interest of seven-elevenths in another tract of land, containing one hundred and twenty-eight acres, for the aggregate consideration of $2400; that on the same day said Foster conveyed the premises to the complainant, by a deed of general warranty, and for securing the payment of the purchase money, the complainant, at the same time, with James Ridges, as his surety, made two notes to the said Foster for $1200 each, one payable on the first of May, 1837, and the other on the 25th of December, 1837 ; that the complainant made the purchase, on the assurance and representation of Foster, that he had [* 571] a good title to the whole of the two hundred and forty acres, but that in truth and fact he had no title to four-elevenths of fifty-eight acres, a part thereof, and which was the most valuable portion of tlie land; that the complainant, at" the time of the purchase, was a citizen of Indiana, and did not discover this defect in the title, till his removal to this state in 18-37; that he has since built a dwelling house and made other valuable improvements on* the land; .that said George Foster died in the spring of 1837, and Peyton Foster was appointed administrator of his estate; that complainant has paid the whole of the note first becoming due, and that Peyton Foster,as administrator of George Foster, in March, 1842, recovered a judgment by default, against him and Ridges, for$1221.86, the balance then due on the other note, about half of which judgment lias been paid. The bill makes Peyton Foster, James Ridges, and the heirs at law of George Foster, defendants, and concludes with a prayer in the alternative, that the contract may be rescinded, or specifically performed. On this bill the complainant obtained an injunction restraining the collection of the judgment. .Peyton Foster, the administrator, in his answer, admits the purchase of the land; the making of the conveyance and the notes; the payment of one of the notes, and the recovery of' a judgment for the balance due on the other, and the partial payment thereof, as charged in the bill. He denies that any fraudulent representations were made by George Foster, in the sale of the land, and insists that in fact but seven-elevenths of the fifty-eight acres were sold, and that it was the intention to convey but that interest, the conveyance ofthe wholeof the tract being by mistake. He states that the title to the fifty-eight acres, and the lot of one hundred and twenty-eight acres was formerly in the heirs of one Abram Miller; that George Foster had purchased of the heirs seven-elevenths of these two tracts, and at the time of the sale had no title to the remaining four-elevenths. He denies that the fifty-eight acres lot is the most valuable part of the land, but insists that it is the least valuable. He admits that the complainant has built a dwelling house, and made some improvements on the land, but denies that they are on the tract of fifty-eight acres. He insists that the four-elevenths of the fifty-eight acres are not worth more than $ 120, and can be purchased for that sum, and contends that if the whole tract was in tended to be sold, the failure of title is no cause for rescinding the contract, but the most the complainant is entitled to is a credit on the judgment for the value of the portion to which the title has failed. Ridges, by his answer, admits the making and execution of the contract, as charged in the bill. He further admits that the complainant made the purchase on the faith of Foster’s representations’ that he had good title to the whole of the fifty- [* 572] eight acres tract, and that the failure of title greatly diminishes the value of the land purchased. The other defendants did not answer the bill. There was a replication to the answer of Foster; and some depositions were taken. On the part of the complainant it was proved by Milton Bridges, that he wrote the deed from Foster to the complainant, and was the justice before whom it was acknowledged; he read the deed two or three times to Foster, who said it was right; before it was signed the complainant said he did not wish to make the purchase, unless Foster had a good title to all the land described in the deed, and Foster repeatedly assured him that he had a good title to it. The witness stated, on cross-examination, that the complainant told him, in the winter or spring of 1842, he had purchased two of the shares of Miller’s heirs, but made no complaint of fraud on the part of Foster, or of a failure of title. It was proved by E. Lockridge, that he was present when the contract was made; the complainant said to Foster he did not wish to make the purchase unless he could get the whole of the fifty-eight acres tract, and Foster replied that he had purchased of Miller’s heirs the whole of the tract and had a good title to it all. The failure of the title to that portion destroys the compactness of the farm, and in the opinion of the witness, renders it much less valuable. It was proved by G. W. Taylor, that if four-elevenths of the fifty-eight acres were taken out, he would consider the farm greatly injured, and would not buy it, under such circumstances. This was all of the testimony on the part of the complainant. The defendant proved by É. Davis, that he was one of the heirs of Miller, and owned one eleventh part of the fifty-eight acres, and the tract of one hundred and twenty-eight acres, which he had sold to the complainant, at the rate of $8 per acre. Another of the heirs sold his interest to the complainant, at the same rate. The two other heirs came from Missouri to sell their shares, but the complainant was not in a situation to purchase, and an agreement was made between him and them, by which their portions of both tracts were set off to them in the timber, without interfering with the improvements. The complainant never complained to witness of not getting all the land he had purchased of Foster. It was proved by W. Shumate, that he wa.s present at a conversation between Foster and complainant, concerning the purchase, a day or two before the deed was made, and understood from the parties, that four-elevenths of the Miller lands were excluded from the sale. On the hearing the court decreed that the injunction be made perpetual, as to the sum of $200, which was directed to be credited on the judgment, as of the day of its rendition, and decided that the costs of the suit to be paid by the administrator of George Foster, in the course of administration, and denied all [* 578] other relief to the complainant. The complainant being dissatisfied with the decree, has prosecuted a writ of error in this court. The first and most important question arising in the case is, whether the complainant was entitled to have the contract rescinded. On the principles of equity and justice, a contract, to be obligatory, must be justly and 1 airly made. The contracting parties are bound to deal honestly, and act in good faith with each other. There should be a. reciprocity of candor and fairness. Both should have equal knowledge concerning the subject matter of the contract; especially ought all the facts and circumstances, which are likely to influence their action, to be made known. If they have not mutually this knowledge, nor the same, means of obtaining it, it is then a duty incumbent on the one having the superior information, to disclose it to the other. In making the disclosure, he is bound to act in good faith, and with a strict regard to truth. If he makes false representations respecting material facts, or intentionally conceals or suppresses them, he acts fraudulently, and renders himself responsible to the consequences which may result. Fraud may consist as well in a suppressio veri, as in a suggestio falsi; for in either case it may operate to the injury of the innocent party. A false representation by the vendor, which influences the conduct of the other party, and induces him to make the purchase, will vitiate and avoid the contract. And in making the representation, it is immaterial whether he knows it to be false or not, for the consequences are the same to the vendee. If' he relies on the truth of the declaration, he is equally imposed on and injured, and ought to have redress from the one who has been the cause of the injury. So a suppression or concealment by the vendor, of facts, which, if known to the vendee, would have the effect to prevent him from making the purchase, will, in equity, equally vitiate the contract. A court of equity will not enforce and catry into effect contracts thus unfairly and fraudulently made. And when the injured party invokes its aid in proper time, and the circumstances of the case will permit it to be done, the contract will be rescinded, and the parties restored to their original rights. 1 Story’s Eq. §§ 191-7, and §§ 204-7 ; 2 Kent’s Com. 482, 490. In the present case, it is most probable that the complainant was induced to make the purchase, by the repeated assurances of his vendor, that he had good title to all of the land which he assumed to sell and convey. It appears that he declined completing the contract, unless he was to obtain thereby the title'to the whole of the fifty-eight acres, which he seemed to regard as an important consideration in the purchase. Whether Foster actually believed he had title or not makes no difference. It was a fraud in either case under the circumstances, if the complainant had resorted to equity in proper time, .and it had appeared that [* 574 ] the vendor or his legal representatives were not in a situation to perfect the title, a rescission of the contract might have been obtained. But on discovering the fraud, he was at liberty to consider the contract as -at an end, and take the necessary steps to procure its recission, or to confirm it, and rely on his covenants of warranty to make good the failure of title. This was a privilege on his part. The election rested solely with him, but he was bound to make it within a reasonable time. The whole case, in our opinion, shows most conclusively that he elected to confirm the contract. E'rom his own showing, he discovered the fraud in the fall of 1837, at the time he took possession of the land, before he had made any improvements on it, and while a great portion of the purchase money was unpaid. After the discovery, he proceeded to erect a dwelling house, and make valuable improvements on the premises. More than four, years afterwards, when sued for the balance of the purchase money, he makes no complaint, and interposes no defence, but permits judgment to go against him, and not until after a partial payment of the judgment, does he manifest any disposition towards a recission of the contract. In the mean time, he had purchased in two of the shares of Miller’s heirs to the land, and not being in a situation to buy the other shares, and secure the whole title, he makes an amicable arrangement with the owners, by which their portions were located in a different part of the land. This act of itself would prevent him from restoring the land to Foster’s heirs in the condition he had received it, even if he was otherwise entitled to have the contract rescinded. After all these acts of confirmation and acquiescence, and five years subsequent to the discovery of the fraud, he comes into a court' of equity, and asks that the contract may be annulled. We have no hesitation in saying, that he is effectually concluded by his own positive acts, from attaining this object. The only other question in the case is, as to the amount of compensation the complainant was entitled to receive, by reason of the failure of title. The bill being filed for the more important object of putting an end to the whole transaction, the court had jurisdiction of the whole case, and could properly settle the rights of the parties, and render any further litigation between them unnecessary. It was therefore proper to enquire into this question, and make the proper allowance. The deed conveyed, in all, three hundred and twenty-one acres. The consideration for the whole was twenty-four hundred dollars. The average price per acre was about seven and a half dollars. The failure of the title was to twenty-one acres. The bill alleges that this portion of the land was the most valuable. The answer denies this allegation. The proof is altogether too indefinite and uncertain, to determine the relative value of this portion to the whole purchase. [*575] In this state of the case it was obviously the only safe and reasonable rule to consider this part of the land as of an • average value, and allow the complainant, by way of compensa- , tion,the amount of such value, with legal interest from the time payment was to have been made, to the rendition of the judgment, and credit the judgment with the aggregate amount. This was the decision of the circuit court, and we see no reason to doubt its correctness. The decree of the circuit court is therefore affirmed. Decree affirmed.